UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA as subrogee of JEFFREY SWEENEY,<br><br>Plaintiff,<br><br>v.<br><br>CYNTHIA LAVOIE and NEW LONDON COUNTY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 1:13-CV-10650-RWZ |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' *MOTION IN LIMINE* TO EXCLUDE THE TESTIMONY OF ROBERT CORRY**

Plaintiff respectfully requests that this Court enter an Order denying Defendants' Motion, as there is significant evidence to demonstrate that Robert Corry's expert opinions regarding the cause and origin of the fire are both reliable and based on sufficient facts and data to find them admissible under Federal Rule of Civil Procedure 702.

**I.   ARGUMENT**

The primary dispute with Mr. Corry's proposed expert testimony is whether it is based on "sufficient facts or data" and whether he "reliably applied" NFPA 921 to the facts of the case. The trial judge has "broad discretion to determine the reliability and relevance of an expert's proposed testimony." *Hochen v. Bobst Group, Inc.*, 290 F.3d 446, 452 (1st Cir. 2002). That an expert's proposed testimony is based on "circumstantial rather than direct evidence does not render this testimony unreliable." *Pacific Indem. Co. v. Dalla Pola*, 2014 WL 7071351, at *9-10

(D. Mass.). In fact, "[b]y the very nature of a fire, its cause must often be proven through a combination of common sense, circumstantial evidence and expert testimony." *Id.* at *10.

The issue here is whether Mr. Corry conducted a thorough investigation and properly applied the relevant guidelines (NFPA 921) to that investigation in reaching his findings. Only when an expert's opinion "is so fundamentally unsupported that it can offer no assistance to the jury" should such testimony be excluded. *Id.* at *9. The focus of the inquiry must be based on the expert's methodology itself (which Defendants seem to ignore) and not the conclusion itself (which Defendants in error contend is inadmissible simply because there is no physical evidence of cigarette butts in the area of origin). Rather, if Defendants still question the propriety of Mr. Corry's expert opinion if it is deemed here reliably based on sufficient facts or data, then they can rely on "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to attack any purportedly "shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

A. **Defendants' Motion Should Be Denied Because Robert Corry's Expert Opinion Regarding Careless Smoking As a Cause of The Fire Is Based on Both Sufficient Facts and Data and a Reliable Application of NPFA 921 to the Results of His Investigation.**

The recent decision of this Court in *Sarro v. Phillip Morris USA Inc.*, 2012 WL 769825 (D. Mass.) is instructive in showing how it evaluated the propriety of a cause and origin expert's proposed testimony regarding careless smoking. Defendant moved to exclude as unreliable the testimony of Plaintiff's cause and origin expert, Malcolm MacGregor. *Id. at Footnote 3*. In evaluating Mr. MacGregor's opinions, the Court emphasized that the expert concluded that careless smoking caused the fire only after conducting a thorough on-site inspection of the loss scene. *Id.* The Court also noted that MacGregor identified the fire's point of origin by "[f]actoring the burn patterns going from the least of burn damage to the most." *Id.* The Court

15593925v.1

then noted that MacGregor employed a process of elimination to determine that the fire's cause was a dropped cigarette, observing that "[t]he depth of char and ensuing burn patterns were a text book [sic] example of a cigarette or cigar falling onto combustible materials." *Id.* Accordingly, MacGregor, based on his experience in applying NFPA 921, and not finding any other source of ignition in the area of origin (as defined by his investigation), concluded that this fire was accidental in nature as a result of smoking materials dropped onto a carpet. *Id.*

The Court concluded that this "process of elimination substantially conformed to accepted fire investigation protocols", underscoring the importance of the expert's analysis of burn patterns in reaching his findings. *Id.* The Court further noted that the "use of a process of elimination also has been validated by NFPA 921..." *Id.* The Court further stated that "[w]hen a fire's origin is clearly defined, the NFPA 921 permits investigators to determine a fire's cause via a process of elimination, *notwithstanding the absence of physical evidence of an ignition source. Id.* (emphasis supplied). In analyzing MacGregor's investigation, and in particular his experience, his on-site inspection at the loss scene, and his analysis of the relevant burn patterns, the Court denied the motion to exclude his testimony. As discussed further below, for similar reasons and arguably in much greater detail, Robert Corry has conducted an investigation that reliably comports with NFPA 921 and is based on sufficient facts or data in reaching his expert conclusions in this matter.

Before discussing in detail how Corry reached his expert opinions, it is important to set forth exactly how much time and effort he expended on this investigation (to ensure its reliability and sufficiency) by itemizing those steps here:

- Corry conducted three cause and origin examinations at the fire scene located at 30 Oak Street, Billerica, Massachusetts on April 27, May 18 and May 30, 2012;
- Corry took 308 photographs of the fire scene from his participation in these three examinations;

-3-

- Corry conducted six recorded interviews from four different witnesses; and

- Corry also conducted a neighborhood canvas of all private residences in proximity to the loss location, though no additional witnesses were found.

In an effort to make plain his opinions (and his methodology in reaching them) in as clear language as is possible, Corry submitted to the following:

- Preparing two expert reports, dated November 26, 2012 and September 30, 2013, which total, in written analysis alone, almost twenty-five pages in length; and

- Providing deposition testimony (as he knows he is required to do as part of expert witness discovery) over two separate days, for roughly five hours in length, and totaling almost 250 pages in sworn testimony.

Though Plaintiff believes that Corry has already sufficiently set forth his methodology and his opinions in a manner that comports with the applicable law, (especially in his two expert reports), Corry nevertheless prepared an eleven-page affidavit in anticipation of Defendants' motion. *See Affidavit of Robert A. Corry, IAAI-CFI; IASIU – CIFI, attached hereto as Exhibit A (with the aforementioned reports also attached).* Corry first attests to the best practices described in NFPA 921 that he relied upon in conducting his investigation "such as working from undamaged areas of the structure towards the area of greatest fire damage . . . identification and examination of each competent source of ignition in the vicinity of the point of fire origin [and] the use of an electrical engineer to conduct an independent analysis of electrical wiring, fixtures and service equipment to ascertain if there was any evidence that this utility was involved in the ignition of the fire." *Id.* at 9 (noting that Plaintiff's electrical engineer had ruled out the electrical system as a cause of the fire).

Corry explains that he "documented the fire scene, building utilities and physical evidence" by taking numerous color digital photographs, three digital video clips and several line drawings. *Id.* Corry then explains how he then "sifted the area of fire origin for evidence

and to the extent possible reconstructed the remaining framing of the breezeway porch where a small fire was first seen in a specific location by two eyewitnesses interviewed separately." *Id.* Corry further states that he "concluded an origin and cause examination based on analysis of fire effects and fire patterns, building utilities and physical evidence and used the data collected to identify the specific area where the fire originated." *Id.* Corry sets forth that four hypotheses were considered and tested, which included the following:

> The hypotheses considered in this case included an intentionally set fire, a fire somehow related to the natural gas system which had piping and a cast aluminum meter located beneath the breezeway porch, a fire initiated by a fault in an energized electrical circuit or electrical device and negligent disposal of burning smoking materials by Cynthia Lavoie in the wood mulched ground space directly in front of the right side of the breezeway porch.[1]

*Id.*

In his affidavit, Corry sets forth in detail how he ruled out the natural gas system as well as the electrical system, based upon eyewitness statements and analysis of the relevant evidence. *Id.* Further, Corry states that "there was no data or any evidence of any nature that this fire had been intentionally set." *Id.* At this point in his investigation, as set forth in his affidavit (as well as his two expert reports), the "only hypothesis that survived the initial hypothesis testing process was negligent disposal of smoking materials by Ms. Lavoie in the wood mulch area to the immediate right of the wood staircase leading to the breezeway porch." *Id.* at 11. The specific data supporting this hypothesis included the following:

> ...the fact that she and she alone, among people known to have been at this house smoked cigarettes; she smoked Parliament brand filter cigarettes and remains of six Parliament brand filter cigarettes were found inside the metal trash container in the kitchen after the fire; . . . she told the public safety investigators that she only smoked one cigarette extinguishing it out by the

---

[1] Again, the specific data and hypotheses considered and tested are set forth in both expert reports attached as Exhibits to the Affidavit.

> roadside but told me later that she had smoked two cigarettes including one while sitting on the stairs to the breezeway porch only a few feet away from the point of fire origin; the four unaccounted for Parliament cigarette butts were found inside the metal trash support a conclusion that she smoked more than two cigarettes at the Sweeney house that day; smoldering cigarettes are known to be competent sources of ignition both in my experience and in the body of fire science literature for fuels like dry bark mulch and peat moss. Both of these susceptible fuels were present at the area of fire origin.
>
> *Id.*

One other important fact for Corry was the eyewitness testimony that there had been a loud pop or explosion a short time after the fire was first discovered, at which time it grew exponentially in size – based on this fact, Corry concluded that the gas meter had become compromised as a result of being exposed to the fire, released fueled gas from the gas meter, which "could only have happened if the fire was traveling <u>under</u> the wood framing of the breezeway porch deck [and] impinged on the meter housing at a very early phase in the fire's development." *See November 26, 2012 report, page 14, attached to Exhibit A; Please see also Exhibit A, page 11.* Finally, Corry concludes that he recognizes both NFPA 921 (as one of the major sources of reliable information on fire science), and the Scientific Method (as the proper methodology to carry out an investigation) to rely upon to structure a fire investigation, form hypotheses and test hypotheses using deductive reasoning and experience gained from over thirty years of training in the field. *See Exhibit A, page 12.* For these reasons, Plaintiff believes that Robert Corry's proposed expert opinion is more than sufficient and reliable under applicable law.

B. **Defendants' Motion Should Be Denied Because It Relies Upon Misstatements or Mischaracterizations of the Evidence or Methodology Relied Upon by Robert Corry in Reaching His Expert Opinions.**

Overall, Defendants' motion seems to suggest that direct evidence is necessary in order for Corry's opinion to be admissible, when circumstantial evidence has been deemed sufficient by this Court for purposes of admitting proposed expert testimony. *See Pacific Indem. Co. at \*9-10*. Further, there are specific points to address in Defendants' motion.

First, it continually misstates the process of elimination methodology employed by Robert Corry in reaching his conclusions as in fact negative corpus methodology – they are two distinct concepts, however. Since Defendants continue to conflate the two concepts in explaining Corry's methodology (which may be a source of their confusion in properly analyzing the propriety of his opinions), a brief discussion of the two concepts is necessary. "Negative corpus," short for negative *corpus delicti*, is fire investigator jargon for a causal determination that a fire was incendiary based on the lack of evidence of an accidental cause. *See Schlesinger v. U.S., 898 F.Supp. 2d. 489, 492 (2012)*. In other words, NFPA 921 does not permit an investigator to conclude that a fire must be arson solely by ruling out all accidental causes – put another way, an investigator must have some sort of evidence to support his conclusions regarding what caused the fire beyond just ruling out all other accidental causes. Process of elimination, on the other hand, as set forth by NFPA 921, may be permissibly relied upon by investigators. §18.2.1 states the following:

> Any determination of fire cause should be based on evidence rather than on the absence of evidence; however, when the origin of the fire is clearly defined, it is occasionally possible to make a credible determination regarding the cause of the fire, *even when there is no physical evidence of the ignition source available. This finding may be accomplished through the credible elimination of all other*

> *possible ignition sources provided that the remaining ignition sources are consistent with all known facts.*

As stated above, NFPA 921 permits an investigator to reach a conclusion by eliminating other potential ignition sources so long as its conclusion is consistent with the facts as the expert comprehends them during his investigation. As discussed above, Robert Corry has sufficient facts or data to support his opinions and also reliably applied NFPA 921 to his investigation to reach these conclusions. By ruling out arson, and by having sufficient evidence to support his opinions (other than relying solely on the process of elimination), Corry has not employed negative corpus methodology here.

Second, Defendants mischaracterize that Corry has no evidence of careless smoking simply because he could not find any butts in the area of origin, and because Lavoie denied either smoking or carelessly discarding any cigarettes in the specific area of origin; in doing so, they ignore all the evidence, not speculation, that he relied upon in reaching his conclusions, as discussed throughout this response.

Third, Defendants improperly insist that tests <u>must</u> be taken of the moss/mulch alleged to have been ignited to prove that they were in fact ignitable. However, the "inability to physically test a hypothesis does not render expert testimony inadmissible if the expert tested his or her hypothesis by systematically eliminating the other possible ignition sources he located in and around the area of origin in accordance with NFPA 921 . . .." *Travelers Cas. Ins. Co. of America v. Volunteers of America*, 2012 WL 3610250 at *4. (citations omitted). As discussed above, Corry definitely reached his conclusions by relying on process of elimination as well as his thirty years' experience dealing with careless smoking fire investigations in concluding that the moss or mulch here was in fact ignitable.

15593925v.1

Fourth, it mischaracterizes Corry's expert opinion as the product of "assumption and personal experience", rather than the numerous hours of investigation spent reaching his findings based on all available evidence as set forth in the itemized steps previously in this response. For this reason, to also argue that he made a "leap" to careless smoking based solely on ruling out arson and electrical wiring grossly ignores the evidence that he did rely upon in reaching his opinions.

## II.   CONCLUSION

Plaintiff finds it ironic that Defendants' expert can critic Corry's opinion so strongly, when he never performed a site visit, and produced a rebuttal expert report that barely exceeds one page in length. Plaintiff emphasizes that both sides agree about the general area of origin, and that there is no source of ignition in that area – at all – since both parties concede that arson and electrical sources of ignition have been ruled out. The difference of opinion here is simply whether careless smoking is involved, and it is for a trier of fact to decide that matter if Corry's opinion is deemed "reliable" and "sufficient" here. Rather, the relevance and veracity of disputed facts, including the credibility of Lavoie's smoking and/or discarding a cigarette improperly in the area of origin (and her alleged habit of carrying butts in her pocket to explain away the presence of six butts in the garbage can after she admitted to smoking only two cigarettes at the house of origin earlier that day) should be for the jury to decide. For all these reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Exclude Robert Corry's expert testimony.

Dated: July 1, 2015                    CITIZENS INSURANCE COMPANY OF
                                       AMERICA as subrogee of Jeffery Sweeney,


                                       _____/s/_____
                                       Brian E. Tetro
                                       WHITE AND WILLIAMS LLP
                                       1650 Market Street
                                       One Liberty Place, Suite 1800
                                       Philadelphia, PA  19103-7395
                                       T: (215) 864-7070
                                       F: (215) 789-6670
                                       tetrob@whiteandwilliams.com

15593925v.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA as subrogee of JEFFREY SWEENEY, <br><br> Plaintiff, <br><br> v. <br><br> CYNTHIA LAVOIE and NEW LONDON COUNTY MUTUAL INSURANCE COMPANY, <br><br> Defendants. | Civil Action No.: 1:13-CV-10650-RWZ |

**CERTIFICATE OF SERVICE**

I, Brian E. Tetro, hereby certify that this document was filed through the Court's ECF system on July 1, 2015 and will be sent electronically to all counsel of record on the Notice of Electronic Filing (NEF).

/s/
Brian E. Tetro

15593925v.1